**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| MUHAMMADI DAVLIATOV a/k/a UMAR HAMZAYEVICH ABDULAYEV (ISN 257), Detainee, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba  *Petitioner,* v. BARACK OBAMA, President of the United States The White House 1600 Pennsylvania Avenue, N.W. Washington, DC 20500; ASHTON CARTER, Secretary, United States Department of Defense 1000 Defense Pentagon Washington, DC 20301-1000; and NAVY REAR ADM. PETER J. CLARKE, Commander, Joint Task Force – GTMO APO AE 09360,  *Respondents.* | Civil Action No. 15-_____ |

---

**PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Muhammadi Davliatov, a/k/a Umar Hamzayevich Abdulayev (ISN 257), respectfully petitions this Court pursuant to 28 U.S.C. §§ 2241 and 2243 for judgment and an order granting him the writ of habeas corpus. The writ should be granted pursuant to 28 U.S.C. §§ 2241 and 2243 and the Court's equitable habeas powers, because Petitioner's detention is arbitrary and violates both the law of the United States and international law.

## THE PARTIES

1. Petitioner is a native of the Republic of Tajikistan who has become stateless, and who is detained without charge since 2002 at the United States Naval Station in Guantánamo Bay, Cuba.

2. Respondent Barack Obama is the President of the United States, and Commander-in-Chief of the United States Armed Forces.

3. Respondent Ashton Carter is United States Secretary of Defense.

4. Respondent Peter J. Clarke is a United States Navy Rear Admiral and Commander of Joint Task Force-Guantánamo (JTF-GTMO), and oversees the United States' detention facility at Guantánamo Bay, Cuba.

5. Collectively, the Respondents are unlawfully applying military force against Petitioner by maintaining him captive at Guantánamo.

## FACTUAL BACKGROUND

6. Petitioner has been detained without charge at the U.S. Naval Station at Guantánamo Bay, Cuba for more than thirteen years, since February 2002. He was arrested in Pakistan by Pakistani officials on November 25, 2001. At that time, he carried no weapons and was not engaged in battle against the United States, any of its coalition partners, or anyone else. In December 2001, Pakistan turned Petitioner over to the custody of the United States military, which brought him to an air base at Kandahar, Afghanistan, and from there brought him to Guantánamo. He is referred to at Guantánamo by Internment Serial Number (ISN) 257.

7. Nearly ten years ago, Petitioner filed a habeas corpus petition challenging the legality of his initial capture and detention. The prior petition was never resolved on the merits.

8. More than six years ago, the government deemed his detention no longer necessary and for that reason stated that it would exercise its discretion to release him.

9. In his prior habeas corpus case, the government obtained a stay of Petitioner's petition, over his objections, based on representations to the Court that the President's Guantánamo Review Task Force determined that he may be released "consistent with the national security and foreign policy interests of the United States" and that he would be transferred from Guantánamo expeditiously.

10. Petitioner's habeas case was subsequently withdrawn without prejudice more than two years ago while he awaited his promised transfer.

11. Since that time, the government has made few if any meaningful efforts to transfer him to any country, and he is unlikely to be transferred in the foreseeable future without a court order.

12. Petitioner remains in detention solely because of bureaucratic inaction and the government's failure to implement its discretionary decision to release him.

13. Petitioner's continuing detention is fundamentally unfair, classically arbitrary, and unlawful.

14. Petitioner therefore has filed the instant new habeas petition challenging the legality of his continuing indefinite detention, and seeks a court order compelling the government to do what it said it would do more than six years ago without a court order—release him.

15. As set forth in the accompanying Motion for Judgment and Order Granting Writ of Habeas Corpus, Petitioner's continuing detention is not authorized by the Authorization for Military Force ("AUMF"), Pub. L. 107-40, § 2(a), 115 Stat. 224, 224 (2001), which must be read

131202935v1 0908600

narrowly to avoid a contrary interpretation that would raise serious constitutional concerns.  The AUMF's authorizes only "necessary and appropriate" force, which limits the duration of Petitioner's detention and requires release without further delay, and does not authorize Petitioner's continuing indefinite detention, potentially for his lifetime, where the government concedes that detention no longer serves its ostensible purpose.  The AUMF does not permit the government to continue to detain him simply because it has failed through administrative neglect for more than six years after deeming his detention no longer necessary and representing to the Court that it would exercise its discretion to release him.

16. Additionally, the Due Process Clause of the Constitution applies at Guantánamo and limits the duration of Petitioner's detention.  Due process and habeas corpus are inextricably intertwined, and imposition of due process limits on Petitioner's indefinite detention without foreseeable end is not otherwise impractical or anomalous.

17. Whatever traditional law-of-war detention authority may have existed at the time of Petitioner's initial capture and detention has unraveled.  To the extent that an armed conflict with the Taliban, Al Qaeda or associated forces continues, which Petitioner does not concede, the practical circumstances of that conflict have become entirely unlike those of the conflicts that have informed the development of the laws of war.  No other conflict in American history has continued for more than thirteen years without foreseeable end against armed groups that did not exist at the time the conflict began, or that no longer exist.

18. The President has also determined that U.S. combat operations in Afghanistan have ended, and any remaining conflict with Al Qaeda or its successors or franchise groups outside of Afghanistan bears no resemblance to the particular conflict in which Petitioner was captured.  If Petitioner was ever at war, that war has long ended.

131202935v1 0908600

19. As the length of Petitioner's non-criminal detention drags on without foreseeable end—for reasons the government concedes are unrelated to any ostensible need for continued detention—the scope of this Court's equitable habeas review must adapt to the changed circumstances and the corresponding, increased risk of an erroneous deprivation of his liberty. Accordingly, the Court should grant Petitioner's habeas petition and order his release from Guantánamo.

## PETITIONER'S BACKGROUND

20. Petitioner was born in 1978 in the Soviet Union, in the town of Panj, just across the Panj River from Afghanistan, in what was then known as the Soviet Socialist Republic of Tajikistan. Tajikistan became an independent nation in 1992 after the collapse of the Soviet Union, but a civil war quickly embroiled the country.

21. Petitioner and members of his family fled across the border into northeastern Afghanistan in 1992 to escape the fighting, but later returned home some months later when they determined that the area around Panj had calmed down enough for them to return safely. Petitioner also returned home because one of his sisters had remained in hiding in Tajikistan rather than flee with the rest of their family.

22. In 1997, a tenuous peace was negotiated by the United Nations between the warring factions in Tajikistan, ending the civil war. In the late 1990s, Petitioner became an employee of a Tajik government ministry responsible for dealing with emergencies such as natural disasters. The head of that ministry, also a native of Panj, was the person who led the military opposition, the United Tajik Opposition, or UTO, to the Tajik government during the 1992-1997 civil war, and the political opposition to the ruling faction of the Tajik government thereafter.

23.     In early 2001, Petitioner abandoned his government position at the ministry and left Tajikistan for Afghanistan to see if there were better opportunities for him there.  He soon found himself unable to return to Tajikistan.

24.     After the United States invaded and began bombing Afghanistan in October 2001, Petitioner fled to Pakistan with thousands of other refugees.  He fled to Pakistan rather than return to Tajikistan because the Tajik government, with the assistance of Russian troops, had firmly shut the border.  Moreover, as a member of the political opposition who was associated with its leader, it was also too dangerous for him to return to Tajikistan.

25.     In November 2001, Petitioner was arrested by Pakistani authorities in a refugee camp and turned over to U.S. military forces for a bounty.  The United States transferred him to Kandahar Air Base in Afghanistan, and then to Guantánamo in February 2002.

26.     Nearly seven years ago, the government determined that there are no military reasons for Petitioner's continued detention and contended that steps were being taken to arrange the end of his custody by the United States. The government represented that its discretionary decision to release Petitioner was final, and there was no practical distinction between that decision and a court order granting his initial habeas petition.  Those matters are conclusively resolved.

27.     Whatever the case may have been when Petitioner was sent to Guantánamo more than a decade ago, no one contends that his detention continues to serve any ostensible purpose (*e.g.*, to prevent return to the battlefield).  For more than six years the government has failed to execute its discretion to release him.

28.     Petitioner's detention is indefinite, arbitrary and perpetual by any measure, and will likely remain so absent a court order.

131202935v1 0908600

29.     Petitioner does not in this proceeding challenge the basis for his initial capture and detention; his petition asserts that whatever the case may have been more than a decade ago, he may no longer be detained under U.S. and international law.  Nor does Petitioner ask the Court to order the government to prove that he is not a "threat"—because the government has already decided that he is not.  And Petitioner does not ask the Court to direct his transfer to any particular country.  He simply seeks an order granting his petition and ordering his release, which will have the practical effect of eliminating any legislative or bureaucratic obstacles to his transfer.  The government has had over six years to transfer him but has failed; its inaction entitles it to no further deference.  The Court should exercise its equitable habeas authority and order his release without delay.

## COUNT I

### PETITIONER'S DETENTION VIOLATES THE AUMF, PUB. L. 107-40, § 2(a), 115 STAT. 224, 224 (2001)

30.     Petitioner incorporates Paragraphs 1-29 above as if fully set forth herein.

31.     Petitioner's detention is arbitrary, indefinite, and perpetual by any reasonable measure, and accordingly is unlawful.  Petitioner continues to be detained because the government has not made sufficient, meaningful efforts to execute its discretion to release him.

32.     The government has claimed authority to detain Petitioner pursuant to the Authorization for Use of Military Force ("AUMF"), Pub. L. 107-40, § 2(a), 115 Stat. 224, 224 (2001), which permits only the use of "necessary and appropriate force [against a narrow set of groups or individuals] in order to prevent any future acts of international terrorism against the United States."  The AUMF does not authorize unlimited, unreviewable detention.

33.     Under the laws of war, a detainee must be released where detention is no longer necessary to prevent return to the battlefield.  The Court should construe the AUMF not to

131202935v1 0908600

authorize Petitioner's detention under these circumstances to avoid serious constitutional issues that would arise from a statute sanctioning non-criminal detention that no longer serves any ostensible purpose.

34.     Petitioner's detention therefore violates the AUMF's qualified force authorization and the Supreme Court's holding in *Hamdi v. Rumsfeld*, 542 U.S. 507, 521 (2004), that indefinite or perpetual detention for no purpose is unlawful.

35.     Under the laws of war, regardless of the nature of the armed conflict, a detainee must be released in circumstances where detention is no longer necessary to prevent his return to the battlefield.  Even in circumstances where detention may be "necessary and appropriate" to prevent a combatant's return to the battlefield, that justification "unravels" if the practical circumstances of the conflict, such as here, are entirely unlike those that informed the development of the laws of war.

36.     Petitioner continues to be held for no reason other than the government has failed over the course of six years to make reasonable efforts to send him somewhere, as it represented to the Court it would do in order in obtaining a stay of his previous habeas case.

37.     Petitioner remains imprisoned for lack of meaningful and coordinated efforts throughout the government to release him, not because the government has concluded that he should still be held.

## COUNT II

### VIOLATION OF DUE PROCESS – U.S. CONST. AMEND. V

38.     Petitioner incorporates Paragraphs 1-29 above as if fully set forth herein.

39.     The Due Process Clause of the Fifth Amendment to the Constitution of the United States applies to prisoners held at Guantánamo.

40. Petitioner's non-criminal detention serves no ostensible purpose, and is indefinite and without foreseeable end, and therefore violates the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

### COUNT III –

### PETITIONER'S DETENTION VIOLATES *HAMDI V. RUMSFELD* BECAUSE ANY TRADITIONAL LAW OF WAR AUTHORITY THAT EVER EXISTED HAS NOW UNRAVELED

41. Petitioner incorporates Paragraphs 1-29 above as if fully set forth herein.

42. Whatever traditional law-of-war detention authority may have existed at the time of Petitioner's initial capture and detention now no longer exists. To the extent an armed conflict with the Taliban, Al Qaeda or associated forces continues, which Petitioner does not concede, the practical circumstances of that conflict have become entirely unlike those of the conflicts that have informed the development of the laws of war.

43. Petitioner must therefore be released because the government has already affirmatively disclaimed any military reasons for continuing to detain him, and has represented to Petitioner and the Court that he can and will be released without delay.

### COUNT IV

### DETAINING PETITIONER UNTIL THE END OF HOSTILITIES WOULD VIOLATE THE GENEVA CONVENTIONS BECAUSE PETITIONER IS A CIVILIAN UNDER THE LAWS OF WAR

44. Petitioner incorporates Paragraphs 1-29 above as if fully set forth herein.

45. Petitioner is not detainable until the end of hostilities in any event because he is a civilian under the laws of war regardless of whether he is detained in connection with international or non-international armed conflict.

46. Detention until the end of hostilities is a concept that applies only to prisoners of war, which in turn is a status that exists only in international armed conflict. Petitioner is not a

131202935v1 0908600

prisoner of war. If Petitioner is detained pursuant to an ongoing armed conflict, which he does not concede, that conflict is non-international in nature.

47. Properly applied, international armed conflict recognizes only two categories of detainees: "combatants," who are entitled to a privilege of belligerency and may become prisoners of war upon capture, and "civilians," who lack combat immunity and may become internees upon capture. Anyone who is not a combatant/prisoner of war is by definition a civilian/internee, and may be held only as long as that person presents an imperative security threat. In addition, non-international armed conflicts do not contemplate a status of combatant/prisoner of war. Those armed conflicts involve only civilians, who must be charged criminally under domestic law or released. Moreover, if Petitioner is not detained pursuant to any armed conflict, the laws of war do not apply to him and he must be charged criminally under domestic law or released. Accordingly, regardless of the type of conflict, Petitioner is properly classified as a civilian and may not be detained until the end of hostilities.

## COUNT V

**THE COURT HAS BROAD EQUITABLE AUTHORITY AT COMMON LAW TO FASHION APPROPRIATE RELIEF AS JUSTICE AND LAW MAY REQUIRE TO REMEDY UNLAWFUL DETENTION**

48. Petitioner incorporates Paragraphs 1-29 above as if fully set forth herein.

49. The Court has equitable, common law habeas authority to dispose of Petitioner's case as law and justice require based on the unique facts and circumstances of Petitioner's case.

50. The Court should exercise this authority to grant Petitioner's habeas corpus petition and to fashion any and all additional relief, including interim and declaratory relief, necessary to effectuate Petitioner's expeditious transfer from Guantánamo.

131202935v1 0908600

## REQUEST FOR RELIEF

**WHEREFORE**, Petitioner respectfully requests that the Court grant him the following relief:

A. Grant him the Writ of Habeas Corpus and order Respondents to release Petitioner from his current unlawful detention;

B. Order that Petitioner be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights; and

C. Fashion such additional relief as is necessary to effectuate his transfer from Guantánamo, including declaratory relief or other interim relief necessary to eliminate any restrictions or break the bureaucratic, inter-agency logjam that has significantly burdened and delayed Petitioner's transfer despite the fact that the parties agree he should be released.

Dated: Chicago, Illinois
November 5, 2015

        Respectfully submitted,

        MUHAMMADI DAVLIATOV

        By: s/ Matthew J. O'Hara
            One of His Attorneys

        Matthew J. O'Hara (Pursuant to LCvR 83.2(g))
        HINSHAW & CULBERTSON LLP
        222 North LaSalle Street, Suite 300
        Chicago, Illinois 60601
        (312) 704-3000
        mohara@hinshawlaw.com

131202935v1 0908600

- 12 -

        J. Andrew Moss (Pursuant to LCvR 83.2(g))
        Lowell E. Sachnoff (Pursuant to LCvR 83.2(g))
        REED SMITH LLP
        10 South Wacker Drive
        Chicago, Illinois 60606
        (312) 207-1000
        amoss@reedsmith.com

        J. Wells Dixon (Pursuant to LCvR 83.2(g))
        Shayana D. Kadidal (D.D.C. Bar No. 454248)
        CENTER FOR CONSTITUTIONAL RIGHTS
        666 Broadway, 7th Floor
        New York, New York 10012
        (212) 614-6423
        wdixon@ccrjustice.org
        skadidal@ccrjustice.org